

FILED

04/25/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 7, 2017

## JOE TRAVIS NORTHERN, JR. v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
No. C-15-313        Roy B. Morgan, Jr., Judge

_____

No. W2016-01058-CCA-R3-PC

_____

Joe Travis Northern, Jr. ("Petitioner") appeals from the denial of his petition for post-conviction relief. Petitioner claims that he received ineffective assistance of trial counsel and of counsel appointed to represent him in a Tennessee Rule of Criminal Procedure 36.1 motion. After a thorough review of the record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and JAMES CURWOOD WITT, JR., J., joined.

William J. Milam, Jackson, Tennessee, for the appellant, Joe Travis Northern, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Procedural Background*

According to this court's opinion from the Petitioner's direct appeal, Petitioner was convicted by a Madison County jury of possession of more than one-half ounce of marijuana with the intent to sell or deliver, possession of a firearm during the commission of a dangerous felony with a prior felony, possession of a firearm by a convicted felon, tampering with evidence, and possession of drug paraphernalia and was sentenced as a Range II, multiple offender to an effective term of eighteen years in the Department of

Correction. *State v. Joe Travis Northern, Jr.*, No. W2013-02757-CCA-R3-CD, 2014 WL 6792756, at *1 (Tenn. Crim. App. Dec. 3, 2014), *perm. app. denied* (Tenn. Apr. 13, 2015). Petitioner appealed claiming that the evidence was insufficient to support his convictions and that the trial court imposed an excessive sentence. Id. On direct appeal, this court summarized the proof at trial as follows:

> On January 9, 2013, Jackson police officers executed a search warrant at [Petitioner's] residence, where [Petitioner] and a second man, Desmond Jones, were present.
> …
> At trial, Captain Christopher Wiser of the Jackson Police Department's Gang Enforcement Unit testified that he found in the home a loaded 9–millimeter Ruger P95 handgun in the kitchen in the space between the wall and a kitchen countertop and a set of digital scales, an open box of sandwich bags, a marijuana grinder, a marijuana blunt, and a bag of loose marijuana on the coffee table in the living room. On cross-examination, he agreed that it would not be uncommon for someone who consumed marijuana to have a marijuana grinder or a marijuana blunt in his or her home.
>
> Investigator Rodney Anderson of the Jackson Police Department's Gang Enforcement Unit testified that he found a police scanner in the living room of the home. He said that police scanners can be used by drug dealers both to listen to "police traffic" and to possibly pick up transmissions between the police and a confidential informant who is wearing a "body wire." On cross-examination, he testified that the police scanner was turned off when they arrived to execute their search but that they turned it on and the device was working.
>
> Lieutenant Phillip Kemper of the Jackson Police Department's Gang Enforcement Unit testified that he found a set of black digital scales with marijuana residue under the couch in the living room of the home. He said that digital scales are commonly used by both sellers and buyers of narcotics to ensure that the amount being sold is accurate.
>
> Investigator Sam Gilley of the Jackson Police Department's Gang Enforcement Unit, the case officer in charge of the search, testified he entered the residence to hear a toilet running in a bathroom near the area in which the SWAT Team had just detained [Petitioner]. He said he looked inside, saw marijuana floating on top of the water, and fished it out of the bowl with the net he carried for such purposes. He also saw either a half-

gallon or a gallon-sized ziplock bag, with some remnants of marijuana still inside, lying on the floor of the bathroom. Investigator Gilley explained that lower level street dealers typically purchase their supplies of marijuana in either a half-gallon bag, which will hold approximately one-half pound, or in a gallon bag, which will hold approximately one pound. He further testified that he and his officers pulled the toilet off the floor and were able to "plainly see that the marijuana was flushed down the toilet also." They were not, however, able to retrieve the flushed marijuana from the sewer line.

Investigator Gilley testified that he found approximately seven "twisted off baggies" on the coffee table in the living room. He explained that these were common in the drug trade:

> [I]f you're selling somebody some marijuana and say they want to buy like a quarter ounce, you'd measure out three and a half, four or five grams of marijuana. You normally throw it on the scale in front of them, throw it on a baggie, tie the baggie up and put it in a little-you know, twist it around in the corner and tie a knot, or whatever you do.

Investigator Gilley testified that the portions of the baggies that he found on the coffee table were consistent with someone selling, rather than buying, marijuana. He explained that if one were a user or a buyer, he would have the cut off corner of the baggie that contained the drugs rather than the remaining portion from which the corner had been cut off: "If you were just a user, you would have the corner where the drugs are. There would be no reason for that [the twisted off portion] to be laying around your house unless you were selling drugs."

Investigator Gilley testified that the 9–millimeter Ruger handgun recovered from the kitchen of the home was loaded with a clip containing ten bullets. He said that a handgun is commonly used in the drug trade "for defense." He agreed that the other items found in the house, including the police scanner, digital scales, marijuana grinder, and plastic bags were "consistent with the sale or delivery of marijuana" and that items consistent with the smoking or consumption of marijuana, such as rolling papers or pipes, were not found in the home. Finally, he identified the statement that [Petitioner] gave in which he denied that he sold drugs, disavowed any knowledge of the gun found in his home, and claimed that the drugs and

- 3 -

drug paraphernalia were items he used in his personal consumption of marijuana. [Petitioner's] statement reads in pertinent part:

> Des [Desmond Jones] come to my house about a hour ago. He did not bring any drugs or weapons inside of my house. Des did not bring anything illegal inside of my house. The marijuana inside of that house is mine. I did not have any other drugs inside the house other than marijuana. The marijuana on the living room coffee table and the marijuana inside the toilet is all that I had. I did not have any guns inside of my house or on my property. I do not sell marijuana, I only smoke marijuana. I only keep marijuana to smoke, depending on how much money I have. The scales and police scanner are mine. The other guy here does not have anything to do with what's in my house.

On cross-examination, Investigator Gilley acknowledged that, despite his direct examination testimony that there were no items consistent with the consumption of marijuana in the home, the home contained a blunt, "roaches" in an ash tray, and some "cigarillo" packaging in the trash.

Tennessee Bureau of Investigation Special Agent Shelandis Garrett, a forensic scientist in the drug chemistry unit of the Memphis Laboratory, testified that the three samples submitted for her analysis in the case consisted of a marijuana cigar, 2.07 grams of marijuana, and 29.57 grams of marijuana. On cross-examination, she agreed that the total weight of the marijuana in the two separate samples was 31.5 grams, which was just over one ounce.

Desmond Jones testified that he arrived at [Petitioner's] house moments before the police officers arrived to execute the search warrant and that he did not bring any drugs or weapons into the home. He stated that [Petitioner] was in a back room when the officers arrived. On cross-examination, he testified that he did not see [Petitioner] with any drugs or weapons.

Eric Muhammad testified in [Petitioner's] behalf that, unbeknownst to [Petitioner], he hid his 9–millimeter P60 Ruger pistol in [Petitioner's] kitchen when he left for a quick trip to the store while visiting [Petitioner] on the morning of the search. He said that when he returned from the store and saw the drug task force at [Petitioner's] home, he continued to his own

- 4 -

home without stopping. On cross-examination, he testified that he was somewhat familiar with handguns but would not be surprised to learn that the pistol was a P95 rather than a P60 Ruger. He acknowledged that he and [Petitioner] were close friends and testified that he showed the pistol to [Petitioner] when he arrived at his home because he thought [Petitioner] might purchase it. He was unable to explain why he had felt it necessary to hide the pistol in the kitchen when he left for the store.

[Petitioner] elected not to testify and rested his case without presenting any further proof.

Id., at *1-3. This court affirmed the convictions, and the Tennessee Supreme Court denied Petitioner's application for further appeal. Id., at *1.

On May 19, 2015, Petitioner filed a motion pursuant to Tennessee Rule of Criminal Procedure 36.1 to correct what he believed to be an illegal sentence. The trial court appointed counsel, and following a hearing in which the parties presented argument but no testimony, the trial court "entered a corrected judgment form for [Petitioner's] conviction of possession of a firearm by a convicted felon, which judgment form reflects a sentence of two years in place of the previously-imposed seven-year sentence for that conviction." The judgment form was signed by the trial judge, the State, and counsel for Petitioner. The trial court found the sentences for the remaining counts to be legal and entered an order dismissing the Rule 36.1 motion. *State v. Joe Travis Northern*,[1] No. W2015-01364-CCA-R3-CD, 2016 WL 269174, at *1 (Tenn. Crim. App. Jan. 8, 2016). This court affirmed the dismissal of the Rule 36.1 motion because Petitioner failed to include the transcript of the hearing in the appellate record. *Id.*

On November 4, 2015, Petitioner filed a timely pro se "Petition for Relief from Sentence or Conviction," in which he claimed that "his [c]onviction was based on use of evidence obtained pursuant to an unconstitutional search and seizure," he was denied effective assistance of counsel, and "illegal evidence" was admitted at trial. Petitioner filed an "Attachment to Post[-]Conviction Petition," in which he made three separate claims that trial counsel was deficient. First, Petitioner claimed that trial counsel was deficient in his pretrial investigation because he called as the defense's only witness a friend of Petitioner "who testified essentially in support of the [S]tate when on cross-examination he testified that [Petitioner] did in fact 'handle' the seized firearm just prior to [Petitioner's arrest]." Second, Petitioner claimed trial counsel was deficient in failing to file a motion to suppress evidence seized during a search of his relative's residence

---

[1] "Jr." does not appear after Joe Travis Northern in the style of the case.

- 5 -

incident to a search warrant. Third, Petitioner claimed trial counsel was deficient "for causing [Petitioner] to reject the plea offer from the State."

On November 6, 2015, the trial court entered a "Preliminary Order," appointing the same counsel who was representing Petitioner on his pending appeal from the order dismissing the Rule 36.1 motion (hereinafter "Rule 36.1 counsel"). On January 29, 2016, shortly after issuance of this court's opinion in the Rule 36.1 appeal, the trial court entered an "Order Substituting Counsel." Substitute post-conviction counsel (hereinafter "post-conviction counsel") filed a "Supplemental Brief in Support of Petitioner's Previously Filed Motion for Post-conviction Relief," in which Petitioner claimed that Rule 36.1 counsel was ineffective in his representation of Petitioner. Petitioner further claimed that his Rule 36.1 motion was dismissed by the trial court without a full and fair hearing.

### Post-Conviction Hearing

The post-conviction court conducted an evidentiary hearing on April 26, 2016. Petitioner testified that the first offer he received from the State was ten years at 100%. Petitioner claimed that the pistol was not his and that another individual was going to "take [the pistol] charge." The next offer was ten years at 35% "without the pistol [charge]." Petitioner said the State next offered six years at 45%. Petitioner testified that he was "willing to cop-out, but the range was too high." Petitioner testified that he was a Range I offender, and if trial counsel "couldn't get it within range," he was "willing to go to trial." On cross-examination, Petitioner agreed that he "chose to reject" the plea offer because trial counsel could not get the range lowered to Range I.

Petitioner stated that he asked trial counsel to file a motion for discovery and a motion to suppress, explaining:

> [W]ell, we really didn't have nothing but they said traffic or something, and that's -- we didn't really have nothing but just the warrant, you know, little issue like that. They just said it was traffic and they kicked in the door, so that's why I was like, I had to done sold [sic] some dope to somebody or something what they saying [sic] in order to even get the door kicked in, you know. That's why I told him to file the motion to suppress the evidence. [W]hat evidence did they have to come into my house, you know what I'm saying?

Petitioner stated that he did not testify at trial but that trial counsel called two witnesses, Mr. Jones and Mr. Muhammad. Mr. Jones testified that he had never seen Petitioner with any marijuana. Mr. Muhammad testified that the pistol found during the

execution of the search warrant was his. According to Petitioner, during the State's cross-examination, Mr. Muhammad stated that Petitioner "touched the gun or something like that." Petitioner testified, "[I]f I'd have knew [sic] that . . . him saying I touched the gun was gonna convict me, I would have took the cop-out." When asked if Mr. Muhammad's trial testimony was that Petitioner "handled the gun," Petitioner explained, "He said I touched the gun, but I never did. He came that morning and tried to sell me the gun. I told him I couldn't do nothing with the gun. I ain't got no problems in the street, you know." Petitioner stated that he brought Mr. Muhammad to talk with trial counsel and that trial counsel and his investigator met privately with Mr. Muhammad. On cross-examination, Petitioner admitted that Mr. Muhammad was a friend of his, that they talked almost daily, and that they talked during the drive to meet with trial counsel. Petitioner expected Mr. Muhammad to tell trial counsel that the pistol was Mr. Muhammad's. Petitioner said, "Well he had to claim his gun; it was his." Petitioner again explained that if he had known that Mr. Muhammad was going to testify that he touched the pistol:

> I would have took [sic] the plea. I done been through this court before. I wouldn't have played with them like that. I'm a little too old to play with them like that. I would have took [sic] that plea and went on about my business if I knew that his testimony wasn't going to be to take his charge, you know.

Concerning his Rule 36.1 motion, Petitioner claimed he was denied a full and fair hearing on his motion, stating, "I never took the stand on that. And so they took five years off for the possession of a firearm, but we never -- I never took the stand. We just talked back and forth."

Trial counsel testified that he filed a motion for discovery but that he did not file a motion to suppress because he "didn't see any issues that [he] could have raised as far as suppression." Trial counsel stated that he reviewed the search warrant and the affidavit supporting the warrant. The affidavit indicated that the affiant received information from a confidential source that had been at Petitioner's residence on Griffin Street and "identified Mr. Joe Northern [as being] in possession of marijuana and cocaine that was available for resale[.]" According to the affidavit, "the confidential informant had been reliable in the past by providing information that led to the seizure of 25 pounds of marijuana, 200 grams of cocaine, 3 grams of methamphetamine, 21 [V]icodin pills, 13 Lortab pills and various items of drug paraphernalia." On cross-examination, trial counsel stated that information from the confidential informant was "fresh" in that it had occurred within 72 hours.

Concerning the two witnesses mentioned by Petitioner, trial counsel stated that Mr. Jones actually testified for the State, not Petitioner. He stated that his investigator met with Mr. Muhammad about a month before trial and obtained a written statement. In his written statement, Mr. Muhammad admitted that the gun was his and that he took it to Petitioner's residence. Trial counsel said the first time he heard that Petitioner "handled" the pistol was when Mr. Muhammad answered one of the State's questions during cross-examination. On cross-examination, trial counsel agreed that he did "everything [he] could" in preparing for this case.

Rule 36.1 counsel testified that there was no hearing on the motion, and therefore no transcript, and that the issues were decided following legal argument before the trial court. On cross-examination, Rule 36.1 counsel was questioned about his representation of Petitioner during the time he served as post-conviction counsel. He testified that the affidavit to the search warrant stated that the officers were searching for "illegal contraband, illegal substances" and that "a reliable informant had been in [Petitioner's] residence in the last 72 hours[.]"

Concerning the Rule 36.1 motion, the post-conviction court noted that some modification of Petitioner's original sentence was granted "by agreement." The post-conviction court found "that post-conviction proceedings do not apply to the Rule 36.1 matter, and therefore, the petition cannot be sustained on that issue."

The post-conviction court found that trial counsel filed a motion for discovery and that discoverable information was provided by the State to trial counsel. Concerning the failure to file a motion to suppress, the post-conviction court accredited the testimony of trial counsel that after reviewing the search warrant and affidavit he did not find grounds to justify filing a motion to suppress. The post-conviction court opined that "a lawyer has an ethical duty to exercise proper conduct and judgment and file any motions in good faith" and additionally that there was "no indication that there'd be any different outcome at all had there been a motion to suppress."

Concerning the failure to properly prepare and interview witnesses, the post-conviction court also accredited trial counsel's testimony. The court noted that trial counsel and his investigator personally interviewed Mr. Muhammad and that they obtained a written statement from him. The post-conviction court also noted that Mr. Muhammad testified that the gun was his and that Petitioner "didn't even know that he had left the gun in [Petitioner's] house" before admitting on cross-examination that Petitioner handled the gun. The post-conviction court noted that the jury heard the testimony and decided what testimony was credible. The post-conviction court found Petitioner had failed to show counsel was ineffective in preparing for trial or in interviewing Mr. Muhammad.

Finally, concerning the plea offer from the State and Petitioner's decision to take his case to a jury trial, the post-conviction court found that trial counsel conveyed the State's offers to Petitioner and that Petitioner chose to reject the offers.

The post-conviction court found that the Petitioner had failed to prove by clear and convincing evidence that trial counsel's representation of Petitioner was deficient and dismissed the petition. This timely appeal follows.

### *Analysis*

On appeal, Petitioner claims that the post-conviction court erred in dismissing his petition because he proved by clear and convincing evidence that he received ineffective assistance from trial counsel and Rule 36.1 counsel. The State argues there is no constitutional right to counsel in Rule 36.1 proceedings, and therefore, post-conviction relief cannot be premised on an alleged deficiency of counsel in a Rule 36.1 proceeding. The State also argues that Petitioner failed to prove that trial counsel was deficient in not filing a motion to suppress or in failing to know that Mr. Muhammad would state on cross-examination that Petitioner handled the gun. We agree with the State.

In order to prevail upon a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2012); *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). Whether the petitioner has met his burden of proof is a question of law that this court reviews de novo. *Arroyo v. State*, 434 S.W.3d 555, 559 (Tenn. 2014).

On appeal, we review a post-conviction court's findings of fact under a *de novo* standard with a presumption that those findings are correct unless otherwise proven by a preponderance of the evidence. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). The post-conviction court's conclusions of law are reviewed "under a purely *de novo* standard, with no presumptions of correctness . . . ." *Id.* When reviewing the post-conviction court's findings of fact, this court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the [post-conviction court]." *Id.* at 456. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." *Id.* (citing *Henley*, 960 S.W.2d at 579).

The right to effective assistance of counsel at trial and on first appeal as of right is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *Douglas v. California*, 372 U.S. 353, 357 (1963); *House v. State*, 911 S.W.2d 705, 712 (Tenn. 1995), *Frazier v. State*, 303 S.W.3d 674, 680 (Tenn. 2010). In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove two factors: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. *Id.*; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that the counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

### Rule 36.1 Counsel

Tennessee Code Annotated section 40-30-103, which provides the grounds for post-conviction relief, states: "Relief under this part shall be granted when the conviction

or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Although there is a statutory right to counsel if a Rule 36.1 motion states a colorable claim, there is no constitutional right to counsel in proceedings under Rule 36.1. As our supreme court stated concerning the right to post-conviction counsel:

> This statutory right does not, however, serve as a basis for relief on a claim of ineffective assistance of counsel in a post-conviction proceeding and does not include "the full panoply of procedural protection that the Constitution requires be given to defendants who are in a fundamentally different position—at trial and on first appeal as of right." *House []*, 911 S.W.2d [at] 712 [] (quoting *[Pennsylvania v.] Finley*, 481 U.S. 551, [] 559, 107 S.Ct. 1990 [(1987)]); *see also Stokes v. State*, 146 S.W.3d 56, 60 (Tenn. 2004).

*Frazier v. State*, 303 S.W.3d 674, 680 (Tenn. 2010).

A Rule 36.1 hearing, like a post-conviction relief hearing, is not a trial, and an appeal from a Rule 36.1 hearing is not a first appeal as of right. Just as "there is no constitutional or statutory right to effective assistance of post-conviction counsel," *House*, 911 S.W.2d at 712, there is no right to effective assistance of Rule 36.1 counsel. Accordingly, a claim for post-conviction relief may not be premised on the supposed deficiency of counsel in a Rule 36.1 proceeding.

### *Trial Counsel*

The post-conviction court accredited trial counsel's testimony. We will not reweigh trial counsel's credibility on appeal. *Fields*, 40 S.W.3d at 456.

### *Alleged Deficiency in Preparing for Mr. Muhammad's Testimony*

As our court has stated previously:

> It is well[-]settled that when a [p]etitioner in post-conviction proceedings asserts that counsel rendered ineffective assistance of counsel by failing to call certain witnesses to testify, or by failing to interview certain witnesses, these witnesses should be called to testify at the post-conviction hearing; otherwise, Petitioner asks the [c]ourt to grant relief based upon mere speculation. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. 1990).

*Terrance Cecil v. State*, No. M2009-00671-CCA-R3-PC, 2011 WL 4012436, at *8 (Tenn. Crim. App. Sept. 12, 2011), *no perm. app*. Petitioner did not call Mr. Muhammad as a witness at the post-conviction hearing so we do not know what Mr. Muhammad's testimony would have been regarding his discussions with trial counsel and counsel's investigator. However, the accredited testimony of trial counsel was that he interviewed Mr. Muhammad and obtained a written statement from him, in which Mr. Muhammad admitted that the gun was his and that he took it to Petitioner's residence.

Mr. Muhammad was a friend of Petitioner. Petitioner spoke with Mr. Muhammad almost daily and took Mr. Muhammad to meet with trial counsel. If anyone could have been able to predict what Mr. Muhammad might say, it was Petitioner. After all, it was Petitioner who allegedly met with Mr. Muhammad when he brought the gun to Petitioner's residence and left it there. If anyone was in a position to anticipate Mr. Muhammad's testimony, it was Petitioner, not trial counsel. Petitioner has failed to prove trial counsel was deficient in preparing for trial or in interviewing Mr. Muhammad.

### *Failure to File a Motion to Suppress*

This court has also explained previously that

> The same standard applies when a [p]etitioner argues that counsel was constitutionally ineffective by failing to file pre-trial motions to suppress evidence. In order to show prejudice, [a] [p]etitioner must show by clear and convincing evidence that (1) a motion to suppress would have been granted and (2) there was a reasonable probability that the proceedings would have concluded differently if counsel had performed as suggested. *Vaughn v. State*, 202 S.W.3d 106, 120 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064-65). In essence, the petitioner should incorporate a motion to suppress within the proof presented at the post-conviction hearing.

*Terrance Cecil,* 2011 WL 4012436, at *8

The accredited testimony of trial counsel was that after reviewing the search warrant and affidavit supporting the search warrant, he did not find grounds to justify filing a motion to suppress. Petitioner presented no proof to show that the search warrant was defective. Concerning the search warrant and affidavit, the post-conviction court stated:

> The court has reviewed the affidavit and [] also considered the sworn testimony of [trial counsel and] his background, training and experience

- 12 -

and that of [Rule 36.1 counsel], and on its face, of course, the affidavit presented now as an exhibit to these proceedings, there was no apparent issue to raise regarding a motion to suppress. So by clear and convincing evidence, the burden has not been carried [] for purposes of post-conviction and [there is] no indication that there'd be any different outcome at all had there been a motion to suppress.

We agree there is no evidence in the record that would justify granting a motion suppress had same been filed. Petitioner has failed to prove that trial counsel was deficient in failing to file a motion to suppress.

Petitioner has failed to prove that trial counsel was deficient in failing to file a motion to suppress evidence and failed to demonstrate that such a motion would have been successful had it been filed. *Id.* This issue is without merit.

*Deficient Performance in Causing Petitioner to Reject Plea Offer*

Petitioner claims that he would have pleaded guilty if he had known that Mr. Muhammad was going to testify that Petitioner handled the gun. This claim is meritless. As stated above, if anyone was in a position to anticipate what Mr. Muhammad might say, it was Petitioner.

Moreover, Petitioner testified that if trial counsel could not get the State to make a Range I plea offer he was "willing to go to trial." When trial counsel was unable to get the State to make a Range I offer, the Petitioner rejected the existing/final plea offer. Trial counsel could not dictate the terms of the State's plea offer or even force the State to make a plea offer in the first place. Petitioner has failed to prove trial counsel was deficient in "causing" the Petitioner to reject the plea offer and proceed to a trial by jury.

In order to prove that counsel was deficient, the Petitioner must demonstrate "that the counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688). The Petitioner failed to present sufficient proof to show that trial counsel was deficient in preparing for trial, interviewing the witness, failing to file a motion to suppress or "causing" him to plead guilty. The Petitioner has not satisfied the first prong of *Strickland*, and therefore, we need not address the second prong. *See Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007).

- 13 -

### <u>*Conclusion*</u>

The judgment of the post-conviction court is affirmed.

                                   _____

                                   ROBERT L. HOLLOWAY, JR., JUDGE